**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| XIN SONG,<br><br>        Petitioner,<br><br>    v.<br><br>FERETI SEMAIA et al.,<br><br>        Respondents. | ) NO. 5:26-cv-03214-KS<br>)<br>)<br>) MEMORANDUM OPINION AND ORDER<br>)<br>)<br>)<br>)<br>) |

Before the Court is the Petition for Writ of Habeas Corpus by a Person in Federal Custody ("Petition") filed by Petitioner Xin Song ("Petitioner") on June 10, 2026.  (Dkt. No. 1.)  For the following reasons, the Petition is **GRANTED**.

## BACKGROUND

Petitioner is a citizen of China who entered the United States on May 31, 2000 as a nonimmigrant visitor.  (Dkt. No. 1 ¶ 9.)  In Petitioner's more than two decades of residing in the United States, Petitioner has worked as a truck driver and developed extensive family and community ties.  (*Id.* ¶ 14.)

In 2008, an Immigration Judge ("IJ") ordered Petitioner removed but granted withholding of removal under the Convention Against Torture ("CAT"), expressly finding that Petitioner would likely be tortured if returned to China.  (*Id.* ¶ 10.)  In 2022, Petitioner's wife, who is a United States citizen, filed a Form I-130 Petition for Alien Relative along with a Form

1

I-485 Application to Register Permanent Residence or Adjust Status.  On August 17, 2023, United States Citizen and Immigration Services ("USCIS") denied the I-130 petition on the basis that it declined to accept the Chinese notarial certificate submitted to establish the legal dissolution of Petitioner's prior marriage.  (*Id.* ¶ 12.)  USCIS subsequently denied the I-485 application.  (*Id.*)

In September 2023, Petitioner filed an appeal with the Board of Immigration Appeals ("BIA"), arguing that USCIS erred in rejecting the Chinese Notarial Certificate  that documented the legal termination of Petitioner's prior marriage.  (*Id.* ¶ 13.)  The appeal remains pending before the BIA.  (*Id.*)

In 2017, Immigration and Customs Enforcement ("ICE") placed Petitioner under an Order of Supervision ("OSUP").  (*Id.*)  Since that time, Petitioner has complied with all reporting requirements and conditions of supervision.  (*Id.*)  Nevertheless, on May 14, 2026, ICE agents arrested and detained Petitioner when he appeared for a routine check-in.  (*Id.* ¶ 17.)  ICE arrested Petitioner without prior notice, without a hearing, and without any allegation of noncompliance or changed circumstances.  (*Id.*)  Petitioner remains detained at the Desert View Annex in Adelanto, California.  (*Id.*)

On June 10, 2026, Petitioner filed the instant Petition seeking immediate release.  (Dkt. No. 1.)  On June 18, 2026, Respondents filed an Answer in which they state they "are not presenting an opposition argument at this time."  (Dkt. No. 8 at 2.)  Petitioner did not file a Reply.

## LEGAL STANDARD

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art. I, § 9, cl. 2).

"The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). District courts may grant a writ of habeas corpus where a petitioner demonstrates they are "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "[D]istrict courts retain jurisdiction under 28 U.S.C. § 2241 to consider habeas challenges to immigration detention that are sufficiently independent of the merits of [a] removal order." *Lopez-Marroquin v. Barr*, 955 F.3d 759 (9th Cir. 2020); *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001) ("Section 2441 habeas proceedings are available as a forum for statutory and constitutional challenges to postremoval-period detention.").

## DISCUSSION

The Petition asserts six claims for relief: (1) unlawful prolonged detention in violation of 8 U.S.C. § 1231(a)(6) and *Zadvydas v. Davis*, 533 U.S. 678 (2001); (2) violation of Petitioner's Fifth Amendment right to substantive due process; (3) violation of Petitioner's Fifth Amendment right to procedural due process; (4) unlawful revocation of Petitioner's OSUP in violation of regulations; (5) violation of the *Accardi*[1] doctrine; and (6) arbitrary and capricious agency action in violation of the Administrative Procedure Act ("APA"). (Dkt. No. 1 ¶¶ 70-102.) As relief, Petitioner seeks immediate release under the prior OSUP and an order enjoining Respondents from re-detaining Petitioner absent a material change in circumstances and full compliance with governing statutes, regulations, and due process requirements. (*Id.* at 30-31.)

\\

\\

---

[1] *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954).

3

## I.   Unlawful Prolonged Detention

### A. Legal Standard

The Immigration and Nationality Act ("INA") provides that once a final order of removal is entered against a noncitizen, the government shall detain the noncitizen during a 90-day removal period while it effectuates the noncitizen's removal.  8 U.S.C. § 1231(a)(2); *Zadvydas*, 533 U.S. at 683.  The "removal period" is the "latest of the following": "(i) The date the order of removal becomes administratively final"; "(ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the [noncitizen], the date of the court's final order"; or "(iii) If the [noncitizen] is detained or confined (except under an immigration process), the date the [noncitizen] is released from detention or confinement."  8 U.S.C. § 1231(a)(1)(B).

After the 90-day removal period, the government may either continue to detain the noncitizen for "a period reasonably necessary to bring about that [noncitizen's] removal from the United States," or release the noncitizen under supervision.  *Zadvydas*, 533 U.S at 689; 8 U.S.C. § 1231(a)(6).  The Supreme Court has found that a six-month period of detention is presumptively reasonable.  *Id.* at 701.  After the six-month period, a petitioner challenging detention must "provide[] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future."  *Id.*  The burden then shifts to the government to produce "evidence sufficient to rebut that showing."  *Id.*

### B. Analysis

Petitioner has been detained since May 14, 2026, a period of about 90 days.  "Although the detention of such persons is 'presumptively reasonable' under *Zadvydas*, that holding does not foreclose them from rebutting the presumption by establishing that there is no significant

4

likelihood of removal in the reasonably foreseeable future." *Abramian v. Bondi*, 820 F. Supp. 3d 1050, 1058 (C.D. Cal. 2026); *see also Trinh v. Homan*, 466 F. Supp. 3d 1077, 1092 (C.D. Cal. 2020) ("At no point did the *Zadvydas* Court preclude a noncitizen from challenging their detention before the end of the presumptively reasonable six-month period.").

Petitioner asserts that if the BIA were to grant his pending appeal challenging the denial of an I-130 petition filed by his spouse, Petitioner may become eligible to pursue adjustment of status to lawful permanent resident. (Dkt. No. 1 ¶ 73.) Petitioner avers that "[t]he existence of a pending avenue for lawful immigration status further undermines any assertion that Petitioner's removal is reasonably foreseeable." (*Id.*) Additionally, Petitioner contends that his removal is not reasonably foreseeable because an IJ granted him withholding of removal to China under the CAT. (Dkt. No. 1 ¶ 73.)

"Where withholding of removal has been granted, there are typically two potential outcomes: either respondents identify a third country to which they seek to remove petitioner and then obtain travel documents for petitioner for same, or the withholding order is appealed to the BIA." *Portillo v. Lyons*, No. 5:26-cv-03297-MAR, 2026 U.S. Dist. LEXIS 176145, at *9 (C.D. Cal. July 30, 2026). Here, the record does not indicate, nor do Respondents argue, that there is any pending appeal of the 2008 order granting Petitioner withholding of removal to China or that Respondents have identified any third country for Petitioner's removal or made any efforts to acquire travel documents for Petitioner's removal to that third country. Thus, Petitioner has demonstrated that his removal is not significantly likely in the reasonably foreseeable future.

As noted, Respondents have not presented any opposition argument to Petitioner's claim. Therefore, Respondents have not met their burden to rebut Petitioner's showing. Accordingly, the Court concludes that Petitioner's detention is unlawful under *Zadvydas* and that Petitioner is entitled to habeas relief on this claim.

## II.    <u>Procedural Due Process</u>

### A. Legal Standard

The Fifth Amendment Due Process Clause provides that no person shall be deprived of life, liberty, or property, without due process of law[.]"  U.S. Const. amend. V.  "The Due Process Clause applies to all 'persons' within the United States . . . whether their presence here is lawful, unlawful, temporary, or permanent."  *Zadvydas*, 533 U.S. at 693.  "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects."  *Id.* at 690.  Thus, nonpunitive government detention violates the Due Process Clause unless the detention is ordered "in certain special and narrow . . . circumstances, where a special justification . . . outweighs the individual's constitutionally protected interest in avoiding physical restraint."  *Id.* (citations omitted).

"In the context of immigration detention, it is well-settled that 'due process requires adequate procedural protections to ensure that the government's asserted justification for physical confinement outweighs the individual's constitutionally protected interest in avoiding physical restraint.'"  *Hernandez v. Sessions*, 872 F.3d 976, 990 (2017) (quoting *Singh v. Holder*, 638 F.3d 1196, 1203 (9th Cir. 2011)).  When determining what procedures are required by due process, courts weigh the three factors outlined in *Mathews v. Elridge*, 424 U.S. 319, 335 (1976)—(1) the private interest at stake; (2) the risk of erroneous deprivation; and (3) the government's interest.

### B. Analysis

With respect to the first *Mathews* factor, Petitioner gained a liberty interest in his continued freedom when he was released on an OSUP and impliedly promised he would not be re-detained so long as he abided by the terms of his release.  *Zapata v. Kaiser*, 801 F. Supp.

3d 919, 934 (N.D. Cal. 2025).  As Respondents have not asserted any justification for revoking Petitioner's OSUP and re-detaining him, Petitioner has a substantial liberty interest in maintaining his life out of custody.  *See id.* (citing 8 C.F.R. § 1236.1(c)(8)); *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) ("[E]ven when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody she has a protected liberty interest in remaining out of custody.").

Turning to the second *Mathews* factor, it is clear "[t]here is [] a significant risk of erroneous deprivation that the additional procedural safeguard of a pre-detention custody redetermination hearing would help protect against." *Aviles-Mena v. Kaiser*, No. 25-cv-06783-RFL, 2025 U.S. Dist. LEXIS 173976, at *14 (N.D. Cal. Sep. 5, 2025).  Immigration regulations provide that an OSUP may be revoked: (1) if the noncitizen "violates any of the conditions of release"; or (2) if it is determined "that there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future."  8 C.F.R. §§ 241.13(i)(1), 241.13(i)(2), 241.4(l)(1).  "[T]he statutory and regulatory language lays out three requirements to protect a noncitizen's right to due process: (1) the noncitizen must be informed of the basis for revocation; (2) the noncitizen must be provided a 'prompt' opportunity to present evidence and explain why revocation is not warranted; and (3) if the revocation is discretionary in nature, it must be made by an appropriate official." *Tiraturian v. Bondi*, No. 5-25-cv-03239-WLH-DFM, 2025 U.S. Dist. LEXIS 271907, at *5 (C.D. Cal. Dec. 8, 2025).

Here, Petitioner was previously released on supervision presumably based on a finding that he is not a flight risk or danger to the community.  Nevertheless, Petitioner was re-detained without any notice or opportunity to challenge his detention.  8 C.F.R. § 241.13(i)(3).  Indeed, Respondents provide no evidence demonstrating that they afforded Petitioner notice that his supervision was being revoked or that they provided Petitioner with an informal interview or opportunity to be heard as to why he should not be re-detained as required by the regulations. In this scenario, the risk of erroneous deprivation is extraordinarily high as "ICE and DHS

agency officials have sole, unguided, and unreviewable discretion to detain Petitioner [without] any process for Petitioner to challenge the exercise of that discretion." *Diaz v. Knight*, No. 2:26-cv-00247-RFB-DJA, 2026 U.S. Dist. LEXIS 29219, at *7 (D. Nev. Feb. 12, 2026); *see also Pinchi*, 792 F. Supp. 3d at 1035 ("Providing [Petitioner] with the procedural safeguard of a pre-detention hearing will have significant value in helping ensure that any future detention has a lawful basis.").

Finally, as to the third *Mathews* factor, "[t]he effort and cost required to provide Petitioner with procedural safeguards is minimal and indeed was previously provided in his case." *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025); *Qian Sun v. Santacruz*, No. 5:25-cv-02198-JLS-JC, 2025 U.S. Dist. LEXIS 165913, at *17-18 (C.D. Cal. Aug. 26, 2025) (finding that "any fiscal or administrative burden the additional procedural safeguard of a hearing before a neutral adjudicator imposes on the government" to be minimal). Although the government has a strong interest in enforcing immigration regulations, that interest is not threatened if a pre-deprivation hearing is required. *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1324 (W.D. Wash. 2025).

Having weighed the above *Mathews* factors, the Court finds that Petitioner had a due process right to a pre-deprivation hearing before the revocation of his OSUP and re-detention. *Perez v. Cal. City Corr. Ctr.*, No. 1:26-cv-02289-DJC-SCR, 2026 U.S. Dist. LEXIS 91115, at *7 (E.D. Cal. Apr. 24, 2026) (weighing the *Mathews* factors and concluding that the "petitioner had a Fifth Amendment due process right to a pre-deprivation hearing before he was re-detained"). Thus, the Court concludes that Petitioner is entitled to habeas relief on his procedural due process claim.

\\

\\

\\

### III.    Remaining Claims

Petitioner's remaining claims are largely duplicative of his unlawful detention and procedural due process claims. As the Court has already concluded that Petitioner is entitled to habeas relief on his unlawful detention and due process claims, the Court need not address Petitioner's remaining claims as a basis for relief.

### IV.    Relief

Having found that Petitioner was re-detained in violation of statutory authority and procedural due process, the Court must next determine the appropriate remedy. "In habeas cases, federal courts have broad discretion in conditioning a judgment granting relief." *Lujan v. Garcia*, 734 F.3d 917, 933 (9th Cir. 2013); *Burnett v. Lampert*, 432 F.3d 996, 999 (9th Cir. 2005) ("Federal courts have a fair amount of flexibility in fashioning specific habeas relief."); *see also Perera v. Jennings*, 598 F. Supp. 3d 736, 742 (N.D. Cal. 2022) ("Declaratory and injunctive relief are proper habeas remedies.").

"Where, as here, a petitioner was re-detained without notice or a pre-deprivation hearing in violation of due process, the detention is 'unlawful from its inception and typically requires immediate release.'" *Victoriano*, 2026 U.S. Dist. LEXIS 96596, at *22 (quoting ) Moreover, "[b]ecause the constitutional violation is the absence of pre-deprivation process, the proper remedy is to restore the status quo ante—that is, to return [Petitioner] to the conditions that existed before his unlawful detention." *Kirykovich v. Hernandez*, No. 2:26-cv-00695-JNW, 2026 U.S. Dist. LEXIS 71703, at *11 (W.D. Wash. Apr. 1, 2026). Therefore, the Court concludes that the appropriate remedy for Petitioner's unlawful re-detention is his immediate release.

\\

9

**ORDER**

For the foregoing reasons, the Petition is **GRANTED**.  **IT IS ORDERED** that Respondents *shall immediately release* Petitioner Xin Song (A-Number 095-200-215) from custody.  Respondents shall file a notice within three (3) days of this Order confirming Petitioner's release.  **IT IS FURTHER ORDERED** that Respondents are enjoined from re-detaining Petitioner without notice and a meaningful opportunity to be heard before an immigration judge to determine whether detention is appropriate.[2]  Judgment will be entered accordingly.

DATED: August 12, 2026

*Karen L. Stevenson*

HON. KAREN L. STEVENSON
CHIEF U.S. MAGISTRATE JUDGE

---

[2] Petitioner also requests an award of costs and attorney fees.  (Dkt. No. 1 at 31.)  Any request for costs and fees must be filed separately and in accordance with the deadlines set by the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412.